UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MEZA, SR., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, acting Commissioner of Social Security, <br><br> Defendant. | No. 1:20-cv-01216-GSA <br><br> **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** <br><br> **(Doc. 17, 19)** |

**I.      Introduction**

Plaintiff Juan Meza, Sr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 17, 19, 20. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.     Factual and Procedural Background[2]**

On June 29, 2018 Plaintiff applied for benefits alleging disability as of December 5, 2017. AR 169–77. The Commissioner denied the applications initially on September 19, 2018, and on reconsideration on December 21, 2018. AR 59–69; 71–82. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on September 4, 2019. AR 37–55. On September 24, 2019 the ALJ issued a decision denying Plaintiff's application. AR 15–36. The

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 9.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

Appeals Council denied review on June 29, 2020. AR 1–8. On August 27, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 5, 2017. AR 23. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine. AR 23. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: obesity, sleep apnea, Bell's palsy, and adjustment disordered with mixed anxiety and depressed mood. AR 24–27. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 27.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with limitations on postural activities. AR 27–30. At step four the ALJ concluded that, considering his RFC, Plaintiff could not perform his past relevant work as a cook (medium exertional level) or fence erector (heavy exertional level). AR 25–26. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the

national economy at the light exertional level to which his skills of cooking and food preparation were transferrable, namely: short order cook, lunch cook, cold meat cook.  AR 31–32. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his alleged disability onset date of December 5, 2017.  AR 26.

### V. Issues Presented

Plaintiff asserts four claims of error: 1) that the ALJ erred in finding his mental impairments non-severe, and in rejecting the associated medical opinions; 2) that the ALJ improperly rejected his testimony; 3) that the ALJ improperly rejected the lay witness testimony; and, 4) the step-five finding is unsupported because cooking is not a transferrable skill.

#### A. Non-Severity Finding; Rejection of Associated Opinions

##### 1. Applicable Law

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005) (*citing* 42 U.S.C. § 423(d)(1)(A)).  A medically determinable physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and will not be found based solely on the claimant's statement of symptoms, a diagnosis or a medical opinion. 20 C.F.R. § 404.1521.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment or combination of impairments is one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  *Webb v.*

*Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. §§ 404.1522, 416.922. "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. 20 C.F.R. § 404.1522, 416.922.

When reviewing an ALJ's findings at step two the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.

*Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

### 2. **Analysis**

On September 7, 2018 Dr. DeBattista performed a consultative psychiatric examination of Plaintiff at the request of the agency. AR 387. He diagnosed major depressive disorder interrelated to physical chronic pain and opined, in relevant part, that Plaintiff would have mild to moderate impairment in his ability to maintain attention, concentration and pace. AR 389. Plaintiff contends the ALJ erred in rejected this opinion by finding only mild limitations, and therefore concluding that Plaintiff's mental health impairments were non-severe.

Notably, the ALJ did not reject the majority of the opinion in finding only mild limitations caused by Plaintiff's mental health impairments. Indeed, Dr. Debattista performed a functional assessment of nine work-related capacities and opined that Plaintiff had no impairment in five out of nine, that plaintiff had only a mild impairment in three out of nine, and that Plaintiff had a *mild to moderate* impairment in one out of nine (attention, concentration and pace). In that respect, the ALJ concluded Plaintiff was only mildly limited, not mild to moderately limited. This was the sole departure from Dr. Debattista's opinion, and a minor one at that. It was well supported by the ALJ's reasoning, namely that Plaintiff's treating provider noted normal attention span and concentration. AR 25–26 (citing Exhibit 11F/7, AR 423); 20 C.F.R. § 404.1520c(c)(2). ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

Plaintiff criticizes the ALJ's reliance on clinical examinations noting adequate concentration, contending that "an ability to pay attention during a 15-minute medical appointment does not translate to an ability to attend and concentrate in a work setting on a regular and continuing basis." Br. at 5-6. Plaintiff criticizes the ALJ's reliance on his daily activities of meal preparation, driving, shopping, fishing and engaging in hobbies which do not translate to an ability to sustain concentration throughout a workday.

Plaintiff's argument is not well taken. It is not the ALJ's burden to prove that Plaintiff has the ability to sustain attention and concentration in a workplace setting. Rather, it is Plaintiff's burden to prove that he cannot. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability."). Plaintiff cites Dr. Debattista's opinion to establish his concentration limitations. Yet Dr. Debatissta's opinion was similarly based only on his one time in person examination during which Plaintiff demonstrated inadequate

concentration. Plaintiff's argument is internally inconsistent insofar as he criticizes the ALJ's reliance on one examination noting adequate concentration, yet asks the ALJ to rely on another examination noting inadequate concentration. In such instance courts are to defer to the ALJ's conclusion. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted) (noting that if the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.).

Plaintiff's treating physician, Dr. Diego, opined that Plaintiff had substantial limitations in essentially every area of mental functioning due to his anxiety. AR 461. Plaintiff criticizes the ALJ's rejection of that opinion for the same reasons discussed above. To Plaintiff's credit, the cited activities of daily living do not necessarily foreclose all of Dr. Diego's identified categories of mental limitations, though they are generally inconsistent with the notion that Plaintiff suffered substantial limitations in essentially every area of mental function.[3]

In any event, the ALJ identified several other reasons for rejecting Dr. Diego's opinion, including that it was: 1) "quite conclusory and cites no objective clinical findings to support the extent and severity of the limitations assessed;"[4] 2) unsupported by Dr. Diego's own clinical findings during a June 3, 2019 examination reflecting adequate concentration and that Plaintiff denied anxiety, nervousness, depression, sadness, and stress (Ex. 11F/7, AR 423); 3) inconsistent with the record as a whole which documented generally unremarkable mental status findings, routine and conservative treatment; and 4) that Plaintiff did not allege mental impairments at the

---

[3] Some of the daily activities the ALJ underscored were quite unremarkable, such as Plaintiff's "ability to live with his wife" and "watch television." AR 24. Cohabitating with a spouse and watching tv in no way speaks to work-related mental functional capacity, yet these items all too often appear in an ALJ's laundry list of activities which purportedly undermine the existence of disabling limitations.

[4] Indeed, Dr. Diego cited no clinical findings or objective signs in support of the opinion, but merely identified "counseling and medical provider visits" without indicating what clinical findings or objective signs were revealed during those visits which suggest mental limitations. AR 465.

8

hearing until prompted to do so by counsel. AR 26.

Thus, the ALJ evaluated the required regulatory factors of supportability and consistency and cited ample evidence in support of the conclusion that Dr. Diego's opinion was not supported by, or consistent with, Dr. Diego's own mental status examination findings or other mental status examinations in the record. 20 C.F.R. § 404.1520c(c)(2). Plaintiff's terse discussion is largely non-responsive to the ALJ's cited reasoning. Rather, Plaintiff's effort in the opening brief and reply was primarily directed at outlining the history of the treating physician rule, it's interpretation and development within the circuit, and the argument for its continued viability notwithstanding the regulatory changes. As Plaintiff reads the prevailing law, the March 27, 2017 regulatory changes should not be read to displace the pre-existing treating physician rule and associated requirements of specific and legitimate reasoning for rejecting a contradicted medical opinion, along with clear and convincing reasoning for rejecting an uncontradicted medical opinion.

The distinction is perhaps more useful in theory than in practice. Supportability and consistency are factors that must be specifically discussed under the regulatory changes when evaluating medical opinion evidence, and the lack of supportability and consistency would certainly be legitimate reasons to reject an opinion based on case law pre-dating the regulatory changes. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) (noting that inconsistency with independent clinical findings in the record is a specific and legitimate reason to reject a contradicted opinion of a treating physician). Thus, where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the new regulatory standard, it would almost certainly pass scrutiny under the old standard as well.

Although any notion of medical opinion hierarchy has been eliminated, one could argue that the revised regulatory standard is actually more demanding of the ALJ when dealing with the medical opinion evidence generally as it underscores the two regulatory factors that must always

be discussed, namely supportability and consistency. The new regulations clarify that a treating physician's opinion cannot not be rejected solely based on factors such as lack of specialization, duration of treatment relationship, frequency of examinations, or "other factors" such as a check-box format, factors which some courts may previously have found to constitute "specific and legitimate" reasoning under the old standard.

To the extent the previous standard can be read as more demanding of the ALJ and more deferential to the treating physician than the current standard, courts in this circuit have rejected the notion that the treating physician rule still pertains to claims filed after March 27, 2017. *Kathy Jean T. v. Saul*, No. 20CV1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) (Although prior case law required an ALJ to provide "clear and convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion, this "measure of deference to a treating physician is no longer applicable under the 2017 revised regulations.").

Thus, the ALJ's discussion (as set forth above) was amply specific and legitimate under the pre-existing treating physician rule as well. Dr. Diego's opinion that Plaintiff had substantial limitations in nearly all areas of mental functioning was owed no deference here. Dr. Diego's opinion was contradicted by his own treatment notes, unsupported by other mental status examination in the record, and in stark contrast to the other three opinions of record which identified no more than mild limitations in any area of mental functioning save for the "mild to moderate" mental limitation Dr. Debattista identified solely in the area of attention, concentration, and pace.

### B. Plaintiff's Subjective Symptomology

#### 1. Applicable Law

The ALJ is responsible for determining credibility,[5] resolving conflicts in medical

---

[5] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor

testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

---

to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

### 2. **Analysis**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 28. Thus, the ALJ was required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

Plaintiff specifically underscores the following testimony which he contends ought to have been credited as true, namely that he: 1) had excruciating pain in his legs and lower back making standing painful; 2) could wash a few dishes, water plants and feed his pets but could not lift the laundry into the washer; 3) needed a cane to rise from a seated position; 4) had to take daily breaks to lie down; 5) could not bend over to lift anything from the ground; 5) suffered forgetfulness and incontinence from his stroke, and 6) was depressed. AR 42, 45, 46, 47, 49, 53–55.

The ALJ rejected his testimony, noting: 1) additional daily activities mentioned in the record such as independent personal care, preparing meals for over an hour, going to the park, fishing twice weekly, shopping for up to two hours, vising family weekly, going to church weekly, making walking sticks in his garage, making rosaries, and managing money. AR 28–29. Although these activities do not necessarily establish an exceptionally high level of functionality, nor establish Plaintiff's ability to sustain gainful employment, they did reasonably establish that his symptoms were not as disabling as alleged. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

The ALJ also found the physical limitations unsupported by objective evidence. The ALJ acknowledged MRI findings of disc space narrowing at L5-S1 with grade 1 anterior

12

spondylolisthesis and bilateral spondylosis. AR 28. Nevertheless, the ALJ noted that musculoskeletal and neurological examinations were overall unremarkable with the exception of occasional findings of lumbar spine tenderness and numbness of the right leg. AR 28 (citing Exhibit 6F/6-7; 7F/16 and 21; 10F/9, 17, 26; 11F/20).

A review of the ALJ's cited exhibits generally confirms the accuracy of the ALJ's description of the same as generally unremarkable save for occasional spine tenderness and numbness to right leg, a characterization which Plaintiff does not acknowledge or dispute. *See* AR 316–317; 347; 351; 398; 436. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ further noted his conservative treatment was limited to pain medication, heat, ice and exercise. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995) ; *Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir. 2007).

Plaintiff contends the ALJ did not specify any more invasive or extensive treatment measures that Plaintiff was offered. Br. at 10. Plaintiff identifies no authority for the proposition that, in order to reject a claimant's testimony based on conservative treatment, the claimant must have been offered and rejected more invasive treatment measures. Nor would such a proposition be logically defensible. If a claimant's medical providers never offer the more invasive treatment in the first place, that strongly suggests the invasive treatment was not medically necessary, whereas a claimant's refusal thereof might potentially be explainable for reasons other than lack of medical necessity.

### C. Third Party Function Report

#### 1. Applicable Law

"[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). Disregarding lay evidence without comment violates the regulatory provision that the Commissioner will evaluate evidence from nonmedical sources. 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). However, "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Inconsistency with medical evidence is a germane reason. *Id.* An ALJ also provides germane reasons for rejecting testimony when the lay witness's testimony is substantively similar to other subjective testimony that has already been validly rejected. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

#### 2. Analysis

Plaintiff's wife submitted a third-party function report describing Plaintiff's limitations, including taking breaks to lie down, inability to stand for long periods, difficulty dealing with stress and routine changes, and reduced ability to lift, squat, bend, stand, walk, kneel, hear, climb stairs, memory, and completing tasks. AR 208–214. The ALJ acknowledged the third-party report and stated that it repeated the claimant's own subjective statements. Plaintiff does not dispute that proposition, but rather relies on his argument that his own statements were well supported. That argument fails for the reasons discussed above. Because the third-party statement largely echoed Plaintiff's own subjective complaints, the ALJ's analysis of the latter was equally applicable to the former. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it

follows that the ALJ also gave germane reasons for rejecting her testimony.")

### D. Step-Five Finding

Plaintiff contends the step five finding is unsupported because the ALJ found he had transferrable skills of cooking and food preparation. Plaintiff cites the definition of a skill from SSR 82-41, which provides as follows:

> What a "skill" is. A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Plaintiff asserts, with no elaboration or legal support, that cooking and food preparation do not meet that definition as they confer no advantage over unskilled workers in the labor market. Plaintiff has established no conflict with the VE's testimony. It appears reasonably self-evident that cooking and food preparation (skills Plaintiff obtained as a cook) are transferrable to the occupations of short order cook, lunch cook, and meat cook, in that the abilities to cook and prepare food would confer an advantage over others in the labor market with no such experience. Moreover, at least one unpublished case has noted that cooking is a transferrable skill. Resp. at 18 (citing *Tamara M. B. v. Comm'r of Soc. Sec.*, No. 2:19-CV-00413-FVS, 2021 WL 785092, at *7 (E.D. Wash. Mar. 1, 2021)). With no authority to the contrary identified by Plaintiff, there is no basis to find error here.

### VII. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court

is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Juan Meza Sr.

IT IS SO ORDERED.

Dated:  **December 16, 2021**                    **/s/ Gary S. Austin**
                                                                       UNITED STATES MAGISTRATE JUDGE